**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| BEVERLY FUQUA *et al*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No.: 1:12-cv-93 (WLS) |
| | : | |
| JOHN PRIDGEN *et al*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER

Before the Court are Defendant Donnie Haralson's Motion to Dismiss (Doc. 48); Defendant Judges John Pridgen, Robert Chasteen, Jr., and T. Christopher Hughes's Motion to Dismiss (Doc. 52); and Defendants James R. Butts, James C. Clark, John K. Fletcher, Dewey R. Hannon, Wilbert King, and Donald C. Paulk's Motion to Dismiss (Doc. 72). For the reasons that follow, the judges' and sheriff's motions (Docs. 48, 52) are **DENIED**, and the third motion (Doc. 72) is **DENIED in part** and **GRANTED in part.**

## RELEVANT PROCEDURAL and FACTUAL BACKGROUND

This is a civil rights case against judges, bailiffs, and a sheriff in Ben Hill County and Crisp County, Georgia. Plaintiffs are members of the public who allege the defendants barred them from attending criminal proceedings at the County Law Enforcement courtrooms, in violation of the First Amendment to the United States Constitution and Article I, Section I, of the Georgia Constitution. (Doc. 1 ¶ 2.) They seek declaratory and injunctive relief to prevent future courtroom closures, nominal damages against the bailiffs, and litigation expenses. (Id. ¶ 1.)

The Court described the factual allegations in a previous order. (Doc. 42.) Here it is sufficient to summarize. Ben Hill County and Crisp County, both of the Cordele Judicial Circuit, have Law Enforcement Centers (LECs). The LECs house pretrial detainees and contain a small courtroom where Superior Court judges hold various criminal hearings, such as arraignments, bond hearings, guilty pleas, and sentencings. Bailiffs or deputy sheriffs guard the LEC courtroom doors and stop every person seeking entrance. To gain entrance, the visitor must identify herself and the criminal defendant whose hearing she wants to observe. The posted officer then tells the visitor to wait in the lobby until that person's case is called. She is then allowed entrance only if she belongs to the criminal defendant's family and that defendant enters a plea of guilty. This practice allegedly occurs regardless of available seating.

Plaintiffs filed the complaint containing these allegations on June 21, 2012. They also moved for a preliminary injunction and provided about a dozen affidavits substantiating the allegations. (Doc. 4.) In opposition to a preliminary injunction, Defendants Chief Judge John Pridgen and Judges Robert Chasteen, Jr. and T. Christopher Hughes ("Defendant Judges") provided affidavits stating they have open proceedings but sometimes ask court officers to limit entry to interested parties because of space limitations. (Doc. 10.) In January and February 2013, Plaintiffs provided five more affidavits from individuals who were excluded from some of the described proceedings. (Doc. 38, 41.)

On February 20, 2013, the Court resolved three pending motions, including Defendant Judges' Motion to Dismiss. (Doc. 42.) In the process, the Court rejected Defendant Judges' arguments that the complaint failed to state a First Amendment

violation and that Plaintiffs were not entitled to a declaratory judgment. The Court then scheduled a hearing on Plaintiffs' Motion for Preliminary Injunction.

Fourteen days after the Order's entry, on March 6, 2013, Defendant Judges executed a standing order titled, "STANDING ORDER 2013-01: COURTROOM ACCESS FOR CRIMINAL PROCEEDINGS" (hereinafter "Standing Order"). (Doc. 52-2.) The Standing Order provides that "this Circuit has been and will continue to be dedicated to the Constitutional Rights of the Public to have access to the Courts." Further, it explains, "it is and always has been the policy of the Superior Court Judges of the Cordele Judicial Circuit that all proceedings in all courtrooms of the Circuit be open to the general public, except when closure is specifically found by the Court to be necessary in certain specific cases provided by law." The Standing Order then provides that the bailiffs and deputy sheriffs "shall allow access for persons who wish to observe court proceedings to the extent possible to remain in compliance with occupancy and safety requirements." The Standing Order states that all criminal court proceedings will be held in the Ben Hill and Crisp County courthouses, unless ordered otherwise in particular cases.

Shortly after filing the Standing Order, Defendant Judges moved to dismiss this case for mootness. They argue the case no longer presents a live controversy because the Standing Order requires the bailiffs and sheriffs to keep courtrooms open and the county courtrooms allow more seating.

In its February 20, 2013 Order, the Court also denied Defendant Crisp County Sheriff Donnie Haralson's motion to dismiss. Haralson filed an interlocutory appeal and renewed his motion to dismiss for qualified immunity and sovereign immunity. After Haralson voluntarily dismissed his appeal, he also moved to dismiss for mootness and lack of standing. He argues Plaintiffs lack standing to seek a declaratory judgment

because he cannot provide the relief requested. Only the judges can decide where and how to conduct the criminal proceedings. He rests his mootness argument on Defendant Judges' Standing Order.

Finally, the newest parties to this action—Ben Hill County bailiffs James R. Butts, James C. Clark, John K. Fletcher, Dewey R. Hannon, Wilbert King, and Donald C. Paulk—moved on May 10, 2013 to dismiss claims for lack of standing and absolute quasi-judicial immunity. Like Sheriff Haralson, they, too, argue they cannot provide the requested relief because only the judges control the courtrooms. Additionally, they claim they are entitled to absolute quasi-judicial immunity because they merely serve as conduits for a valid judicial order. The bailiffs also move to dismiss any existing Sixth or Fourteenth Amendment claims.

## DISCUSSION

The Court first addresses Defendants' Motions to Dismiss Under Rule 12(b)(1) for lack of standing and mootness. After concluding the case remains justiciable, the Court rejects Defendant Bailiffs' assertion of absolute quasi-judicial immunity. To the extent Plaintiffs raised Sixth and Fourteenth Amendment claims in their complaint, the Court dismisses them. Finally, the Court denies Defendant Haralson's renewed grounds for dismissal.

### I. Justiciability

Article III of the United States Constitution limits federal judicial power to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "In our system of government, courts have 'no business' deciding legal issues or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 341 (2006). This limit—called

justiciability—preserves separation of powers and ensures that the courts of the United States focus only on cases presenting an actual adversarial dispute. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001).

The requirement of justiciability includes the doctrines of standing and mootness. *Id.* Both standing and mootness ask, in essence, whether interested parties present a case with an actual, live controversy to which a court can provide meaningful relief. *E.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Defendant Bailiffs and Defendant Haralson claim Plaintiffs lack standing to pursue injunctive or declaratory relief because these defendants allegedly have no control over the courtroom proceedings. Defendant Judges and Defendant Haralson argue this case is moot because they have ceased the challenged practice. After a consideration of both arguments,[1] the Court concludes that this case is justiciable as to all parties and claims.

   a.  **<u>Standing</u>**

Standing is a core component of Article III's case-and-controversy limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "The Supreme Court has explained that the 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (citing *Lujan*, 504 U.S. at 560–61).

Defendant Haralson and Defendant Bailiffs challenge the third element. Redressability requires the plaintiff to show it is "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S.

---

[1] The Court may consider the entire record on a motion to dismiss for lack of standing or mootness, *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006), and the Court has considered the entire record.

at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). In other words, "[r]edressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1266. The remedy need not mend every injury, so long as it provides some measure of relief. *See Massachusetts v. EPA*, 549 U.S. 497, 526 (2007).

Non-judicial defendants claim redressability is lacking because they have no authority to grant the requested relief. Specifically, only the judges, they assert, can control who enters the courtrooms and where the proceedings are located. Thus, they argue injunctive and declaratory relief cannot remedy Plaintiff's alleged injury. This argument is unpersuasive.

First, assuming Defendants' version of the events—that they are merely passive enforcers of the judge's instructions—their arguments lack legal merit. It is bedrock federal law that a defendant who enforces an unconstitutional policy can be enjoined from future enforcement, regardless of the policy's authorship. *See Odebrecht Constr., Inc. v. Sec'y, Fla. Dept. of Transp.*, 715 F.3d 1268, 1289–90 (11th Cir. 2013). Defendants' argument to the contrary is like saying the attorney general in *Ex Parte Young* could be not enjoined because he was enforcing a legislative act only the legislature could amend. *Cf. Ex Parte Young*, 209 U.S. 123, 159–60 (1908). The act may be unconstitutional in the abstract but it does not generally cause injury until there is a possibility of enforcement. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Enjoining an executive officer from carrying out an unconstitutional command prevents that command from causing injury.

Notably, neither the bailiffs nor Sheriff Haralson offer any law to directly support this result. Their reliance on *Abdullah v. Alabama Sentencing Commission*, 386 F. App'x 947 (11th Cir. 2010), is misplaced. Defendant Bailiffs description of *Abdullah* is accurate: "In that case, the plaintiff sought to have a state statute concerning sex offender reporting abrogated and to have state records of sex offenders purged . . . . The defendant, however, was only empowered to make recommendations concerning criminal legislation and was not empowered to enact, modify, appeal or *enforce* legislation." (Doc. 72-1 at 4 (citing *Abdullah*, 386 F. App'x at 949) (emphasis added).) Unlike *Abdullah*, Defendants not only enforce the challenged practice, but also, based on the preponderance of the record evidence, enforce it with wide discretion.

Second, beyond its lack of legal support, Defendants' arguments face a more practical problem. The record does not support their role as passive enforcers. Defendants point to the judges' affidavits and Standing Order to establish they obediently minister the judges' instructions. This is odd, because, in those very documents, Defendant Judges imply, perhaps accidentally or unintentionally, that any violation is on the part of the bailiffs and deputy sheriffs. "It . . . has always been" the judge's policy to keep the courtrooms open absent a case-by-case finding. (Doc. 52-2.) Further, the judges claim they have *always* directed the bailiffs and deputy sheriffs to allow the public in the proceedings as space permits. (*E.g.*, Doc. 10-1 ¶¶ 18–22.) But someone, according to the allegations of about a dozen affiants, has denied the public full access to the proceedings at the LECs despite abundant seating. In every case, the person in the first instance to deny entry is a bailiff or deputy sheriff.

In summary, the record and law amply support the Court's finding that Plaintiffs have standing to seek an injunction against the bailiffs and sheriff. Regardless of the

source of the alleged policy of closure, an injunction will prevent them enforcing the challenged practice. Because the Court concludes Plaintiffs have standing to seek injunctive relief, the Court likewise finds they may also seek a declaratory judgment. *See Arris Group, Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011) ("A party has standing to bring an action under the declaratory judgment act if an 'actual controversy' exists, 28 U.S.C. § 2201(a), which is the same as an Article III case or controversy."). Their motions to dismiss on this ground are **DENIED**.

### b. Mootness

Defendant Judges and Defendant Haralson claim this case is now moot because the Standing Order ends the challenged practice. "[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). When a case becomes moot—meaning it no longer presents a "live" controversy to which a court can provide meaningful relief—a court must dismiss it for lack of justiciability. *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004) (citations omitted).

Ordinarily, a defendant cannot moot a case in the midst of litigation simply by ending its unlawful conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). For that reason, the defendant who seeks to moot a case through voluntary cessation of the challenged practice faces a "stringent" burden.

*Friends of the Earth*, 528 U.S. at 189. He must show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

The Eleventh Circuit has recognized that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano*, 382 F.3d at 1283 (emphasis in original). If there is reasonable basis to believe the terminated conduct will recur, however, the government defendant is not entitled to rely on its presumption to moot the case. *Id.* at 1283–85; *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010). Courts in the Eleventh Circuit consider a number of factors to weigh the possibility of recurrence for government officials: (1) whether the termination of the offending conduct was unambiguous, (2) whether the policy change appears to be the result of substantial deliberation or simply an attempt to manipulate the Court's jurisdiction; and (3) whether the government has "consistently applied" the new policy. *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013) (citations omitted).

The timing and content of the decision are relevant both to whether the termination was unambiguous and whether the policy change appears to be an attempt to manipulate the Court's jurisdiction. *Harrell*, 608 F.3d at 1266–67. "As for timing, a defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness . . . while cessation that occurs 'late in the game' will make a court 'more skeptical of voluntary changes that have been made.'" *Id.* at 1266 (citations omitted). Thus, for example, the Eleventh Circuit has found cases justiciable when the state changed course after being sued by a plaintiff and the Department of Justice, *Rich*, 716

F.3d at 532; when the defendant brought a mootness argument during a hearing for preliminary injunction, *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1312 (11th Cir. 2011); and when a city moved to dismiss the case for mootness one day after amending its challenged ordinance and six weeks after the filing of the lawsuit, *Nat'l Adver. Co. v. City of Ft. Lauderdale*, 943 F.2d 283, 284–86 (11th Cir. 1991).

As for the content of the decision, the Eleventh Circuit has considered a number of factors to determine whether the defendant "unambiguously terminated" the unlawful conduct. *See Harrell*, 608 F.3d at 1267. "[A]ct[ing] in secrecy, meeting behind closed doors and . . . failing to disclose the basis for [the] decision" cut against a finding that the case is moot. *Id.* (noting that, as a result of the secrecy, the court has "no idea whether the [defendant's] decision was 'well-reasoned' and therefore likely to endure"). Likewise, courts view with skepticism defendants who, while claiming the case is moot, continue to push the challenged practice's constitutionality. *See id.*; *ACLU v. The Florida Bar*, 999 F.2d 1486, 1494 (11th Cir. 1993).

Additionally, "[i]n determining whether an offending policy is likely to be reinstated, the [the Eleventh Circuit] is more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly. . . . Conversely, [the court is] more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate.'" *Atheists of Fla., Inc. v. City of Lakeland, Fla.*, 713 F.3d 577, 594 (11th Cir. 2013) (internal citation and quotations omitted).

Applying these factors, the Court concludes Defendants have not unambiguously terminated the challenged practice. Defendants' Standing Order, filed nine months after the initiation of this lawsuit, came "late in the game." *Rich*, 716 F.3d at 532 (citation omitted). The extraordinary delay in executing the one-page order causes the Court pause, particularly given the haste—two weeks—with which Defendants executed it following the denial of their motion to dismiss. That the Standing Order arrived just before a hearing on a motion for preliminary injunction also suggests Defendants have not unambiguously terminated the challenged practice. Defendants have offered no explanation for the delay.

The content of the Standing Order fares no better in the Court's analysis. The Court agrees with Plaintiffs that the Standing Order merely reiterates the position Defendants took in their motion to dismiss and response to Plaintiffs' Motion for Preliminary Injunction. The Order begins by explaining the Defendant Judges are dedicated to the public's constitutional right to attend court proceedings. Further, the Standing Order explains "it is and *always has been* the policy of the Superior Court Judges . . . that all Court proceedings in all courtrooms of the Circuit be open to the general public, except when closure is specifically found by the Court to be necessary in certain specific cases as provided by law." (Doc. 52-2 (emphasis added).) The Order therefore requires "the bailiffs and/or deputy sheriffs . . . [to] allow access for persons who wish to observe court proceedings *to the extent possible to remain in compliance with occupancy and safety requirements.*" (*Id.* (emphasis added).) But Defendant Judges have long argued their proceedings are open to the public "to the extent possible to remain in compliance with occupancy and safety requirements." (*See* Doc. 10 at 10 (noting the judges instruct courtroom staff to "first ensure that any members of the

public with an interest in the proceedings . . . are permitted to enter the courtroom for those proceedings and then, if space is available, permit the public to enter and leave at their discretion"); Doc. 10-1 ¶ 22 ("My instructions to the bailiffs are, and always have been, that when space is available members of the public should be permitted to enter and leave at their discretion provided that they do not disrupt proceedings."); Doc. 10-2 (same); Doc. 10-3 (same); Doc. 9-1.) At bottom, the Standing Order harkens back to the same hyper-technical argument the Defendants made in their motion to dismiss— namely, that because they never entered a written or oral order formally closing the courtroom, there was and is no constitutional violation, merely space limitations. But this explanation fails to explain why so many members of the public allege they are excluded from proceedings, despite available seating. Additionally, by maintaining it "always has been" the judges' policy to keep the proceedings open, Defendants have essentially continued to press the challenged practice's constitutionality.

Because the Standing Order echoes familiar statements, it raises questions about the reasons for its sudden issuance. In explanation, Defendants point to affidavits they executed about a year ago, which reflect "their intention . . . to do what is necessary to ensure that all superior court proceedings are open to the public to the extent consistent with capacity and safety concerns. . . . Moving all superior court criminal proceedings to the larger county courthouses which can accommodate more members of the public and ordering all bailiffs and deputy sheriffs to follow their directives in this regard accomplishes this objective." (Doc. 77 at 8.) But the Court fails to see why this reasoning did not persuade Defendants sometime in the nine months between the complaint and Standing Order. Because the Standing Order's reasoning and purpose are buried

beneath such questions, the Court is unable to assess whether its reasoning is sound today and whether the decision is likely to endure. *See Harrell*, 608 F.3d at 1267.

The evidence also preponderates toward a finding that the challenged practice is more than a one-time occurrence. About eighteen people have testified via affidavit that they have been excluded, often on different days, from some part of the LEC proceedings. In their affidavits, Defendants disavow any knowledge, beyond a single episode, of complaints from members of the public being excluded from criminal proceedings at the LECs. But this statement is undermined by the fact that Defendants were sued for the same conduct in 2003. But regardless of that case, this lawsuit and the affidavits in the Motion for Preliminary Injunction surely put Defendants on notice of complaints about the proceedings in the LECs. Despite that, Plaintiffs furnished affidavits as late as February 2013 of people who cannot gain access to all of the proceedings. Because the challenged practice is not a fleeting, one-time incident, the Court is less likely to find the case is moot. Finally, the Court notes there is no evidence that Defendants have consistently applied the new policy. There is also no evidence in the record identifying any case-specific decision by order based on space limitations.

For those reasons, the Court finds the case is not moot because Defendants have not unambiguously terminated the challenged practice. The same facts also make it appear as though Defendants' Standing Order is an attempt to manipulate the Court's jurisdiction. In other words, at this stage, the Court cannot say it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur at the LECs or the county courthouses.

Defendants' Motions to Dismiss must be, and are, **DENIED**.

## II. <u>Absolute Quasi-Judicial Immunity</u>

Defendant Bailiffs claim they are entitled to absolute quasi-judicial immunity because they are being sued for executing a judge's facially valid order. The doctrine of absolute quasi-judicial immunity derives from absolute judicial immunity. *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). "The policy justifying an extension of absolute judicial immunity . . . is to prevent court personnel and other officials from becoming a 'lightning rod for harassing litigation' aimed at the court." *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (quoting *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)). "Therefore, law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a section 1983 action." *Roland*, 19 F.3d at 556 (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986)). A "facially valid order" does not mean a lawful order. *Id.* "An erroneous order can be valid." *Id.* (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1473 (10th Cir. 1990)). But "[w]hile non-judicial officers are entitled to absolute immunity when their official duties have an integral relationship with the judicial process . . . that immunity only attaches when the officials are acting within the scope of their authority." *Blanchard v. Overton*, 449 F. App'x 862, 864 (11th Cir. 2011) (internal quotation marks and citations omitted). The party invoking the immunity bears of the burden of establishing it applies. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).

The Court finds that Defendant Bailiffs have not met their burden. Absolute quasi-judicial immunity does not apply to claims for declaratory and injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 540 (1984); *Shuler v. Swatek*, 465 F. App'x 900, 903 (11th Cir. 2012) (noting, in suit against sheriffs acting in quasi-judicial capacity, that

"judicial immunity does not bar claims brought under § 1983 seeking injunctive and declaratory relief.").

As to Plaintiffs' request for nominal damages, Defendant Bailiffs have failed to show they followed a valid judicial order and, thus, acted with absolute immunity. According to the Complaint, the bailiffs are "*directly* responsible for setting policy and determining who enters and leaves the courtroom, and when." (Doc. 43 ¶¶ 19–24 (emphasis added).) The Complaint states that the bailiffs do not allow members of the public into the courtrooms unless (1) the person seeking entry is related to a criminal defendant *and* (2) the criminal defendant enters a plea of guilty. (*Id.* ¶ 27.) The Complaint provides numerous examples of the bailiffs applying this policy. (*Id.* ¶¶ 31(a), 31(b), 31(d), 31(e).) The judges allegedly have "authorized, condoned, ratified, approved, and/or knowingly acquiesced" in this policy, (*Id.* ¶¶ 15–17) but nothing in the Complaint implies they ordered the bailiffs to restrict access in this manner.

Drawing all reasonable inferences in Plaintiffs' favor, and limiting review to the four corners of the complaint, *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted),[2] the Court must conclude that Defendant Bailiffs are not entitled to absolute quasi-judicial immunity at this immature stage of litigation.

This ground is also **DENIED**.

### III.   Sixth and Fourteenth Amendment Claims

Defendant Bailiffs move to dismiss Plaintiffs' Sixth and Fourteenth Amendment claims.   To the extent Plaintiffs bring those claims, they are **DISMISSED** for the reasons stated in the Court's previous Order. (Doc. 42.)

---

[2] Because the Court has not considered materials outside of the Complaint to address this ground of Defendant Bailiffs' Motion to Dismiss, the Court does not convert the motion to a motion for summary judgment.

**IV.    Defendant Haralson's claims for qualified immunity and sovereign immunity**

Defendant Haralson renewed his claims for qualified immunity and sovereign immunity in his motion to dismiss to preserve those issues for appeal. The Court now denies those claims for the same reasons stated in its previous Order. (Doc. 42.)

## CONCLUSION

For those reasons, Defendant Judges' and Defendant Haralson's motions (Doc. 48, 52) are **DENIED**. Defendant Bailiffs' (Doc. 72) motion is **DENIED in part** and **GRANTED in part**, as follows: all of Defendant Bailiffs' claims regarding standing and absolute quasi-judicial immunity are denied, and his claims regarding any existing Sixth and Fourteenth Amendment claims are granted.

**SO ORDERED**, this  30th  day of July 2013.

 /s/ W. Louis Sands 
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**